UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

TIFFANY SHARAE THREATT,

                      Plaintiff,
         -vs-                          **No. 1:15-CV-00460 (MAT)**
                                       **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                      Defendant.

─────────────────────────────────

I.   **Introduction**

     Represented by counsel, Tiffany Sharae Threatt ("plaintiff")
brings this action pursuant to Titles II and XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
the Commissioner of Social Security ("the Commissioner") denying
her applications for disability insurance benefits ("DIB") and
supplemental security income ("SSI").  The Court has jurisdiction
over this matter pursuant to 42 U.S.C. § 405(g).  Presently before
the Court are the parties' cross-motions for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.  For the reasons discussed below, the Commissioner's
motion is granted.

II. **Procedural History**

     The record reveals that in February 2012, plaintiff (d/o/b
November 5, 1976) applied for DIB and SSI, alleging disability as
of January 2008. After her applications were denied, plaintiff
requested a hearing, which was held before administrative law judge
Curtis Axelson ("the ALJ") on September 17, 2013. The ALJ issued an

unfavorable decision on January 2, 2014. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Evidence**

Plaintiff's medical record relates largely to treatment received in connection with a series of work-related injuries. In addition to these injuries, plaintiff carried a diagnosis of osteopetrosis (also known as marble bone disease), a rare inherited disorder whereby the bones harden, becoming denser, which can cause bones to dissolve and break. As treating orthopedist Dr. Cameron Huckell explained, "[a]dult osteopetrosis requires no treatment by itself, though complications of the disease might require intervention. No specific medical treatment exists for the adult type." T. 295. Medical records indicate that from January 2008 forward, plaintiff was kept out of work by doctors in relation to her various workers compensation claims. There are numerous treatment notes in the record, from multiple physicians, finding that plaintiff was temporarily totally or permanently partially disabled for workers compensation purposes during the relevant time period. The record, which is quite large and appears to include all of the relevant treatment notes, does not contain any assessment of plaintiff's functional limitations from a treating source.

Plaintiff sustained a work-related back injury in January 2008 while performing the duties of her job as a certified nurse's

assistant. Follow-up treatment notes from Dr. Huckell indicate that
plaintiff reported "adequate short-term relief" with regular
chiropractic care following that incident. T. 292. Plaintiff used
no assistive devices at that time, although physical examinations
revealed limitations in lumbar spine range of motion ("ROM") and
positive straight leg raise ("SLR") tests. Plaintiff was diagnosed
with a "slightly worsened small preexisting C4-5 disc herniation
with a component of suspected instability and a L5-S1 disc bulge
with foraminal stenosis." T. 295. Plaintiff was advised to
"continue all conservative care consisting of regular chiropractic
manipulations." Id.

In August 2009, plaintiff underwent surgery for a stress
fracture to her femur, an injury which had occurred some months
prior. The surgery was noted to be difficult, but subsequent
records indicate that the fracture fully healed within several
months after the surgery.

After sustaining back and leg injuries in a December 2009
motor vehicle accident, plaintiff treated with Dr. Huckell from
that month through May 2011. Dr. Huckell's treatment notes indicate
that plaintiff's condition improved through February 2010, and
subsequently stabilized. She continued to complain of pain, and
physical examinations revealed decreased ROM of the lumbar spine,
but physical examinations revealed negative SLR bilaterally,
functional ROM of the shoulders, elbows, wrists, hips, knees, and

ankles, and full strength of the lower extremities. From March 2010 through May 2011, Dr. Huckell noted that plaintiff was "partially disabled" for workers compensation purposes. T. 313, 317, 321, 325.

During that same time period that plaintiff treated with Dr. Huckell, she also treated with Drs. Michael Calabrese and Glennell Smith, her primary care physicians. Results of plaintiff's examinations with Drs. Calabrese and Smith were consistent with the results of those from Dr. Huckell. Treatment notes spanning this time period from pain management specialist Dr. Andrew Matteliano are also consistent. In June 2010, orthopedist Dr. Donald Nenno wrote in a letter to Dr. Smith that plaintiff's "pain [was] magnified due to her chronic narcotic use for her ower back." T. 676.

Dr. John Schwab completed a consulting internal medicine examination, at the request of the state agency, in May 2012. Plaintiff's physical examination was largely unremarkable, with the only abnormal findings involving a squat at 25 percent of normal secondary to knee pain, and limited range of motion of flexion and extension of the lumbar spine. Lateral flexion and rotation of the lumbar spine, however, were normal. Dr. Schwab found "[n]o restrictions based on the findings of [his] examination." T. 893.

In subsequent treatment with Drs. Glennell and Matteliano, records of which span through May 2013, plaintiff continued to exhibit limited ROM of the cervical and lumbar spine.

Dr. Matteliano consistently noted that plaintiff's pain was controlled with hydrocodone and muscle relaxants, at a reported 4/10. See T. 927, 929 (noting the pain level was "acceptable"), 930-36. The most recent treatment notes from Dr. Matteliano indicate that he assessed her as having a permanent partial disability for workers compensation purposes.

**IV.  The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2012. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.920, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 11, 2008, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: osteopetrosis; status post right hip fracture and status post right femur fracture; overuse injury to her left knee; status post phalanx fracture of her left foot; rheumatoid arthritis; injury to her upper and lower back; and muscle spasms. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). At step four, the ALJ found that

plaintiff was unable to perform past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   RFC

Plaintiff contends that the ALJ erred by failing to include a specific function-by-function analysis prior to coming to an RFC determination. As plaintiff acknowledges, however, the Second Circuit has held that such an analysis does not constitute *per se* legal error requiring remand. See Cichoki v. Astrue, 729 F.3d 172, 173-74 (2d Cir. 2013). Where an ALJ's decision "provides an adequate basis for meaningful judicial review, . . . applies the correct legal standards, and . . . is supported by substantial evidence, remand is not required." Id. at 174.

In <u>Cichoki</u>, the Second Circuit held that "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." <u>Id.</u> at 177. Here, the ALJ's analysis of plaintiff's RFC at step four is quite thorough. See T. 22-35. The ALJ discussed all of the relevant medical evidence when coming to his conclusion that plaintiff could perform sedentary work, his analysis followed the proper legal standards, his rationale is clear from his decision, and, as discussed below, his RFC finding was supported by substantial evidence. For these reasons, the ALJ's failure to include a specific function-by-function analysis did not constitute reversible error.

**B.   Development of the Record**

Plaintiff next argues that the lack of a treating source opinion left a "gap" in the record and therefore the ALJ's RFC finding is unsupported by substantial evidence. Plaintiff also argues that because the ALJ did not give significant weight to any one medical opinion, his decision was based on an interpretation of the bare medical findings. According to plaintiff, the ALJ should have obtained a detailed functional assessment from a treating

source, and his failure to do so constituted reversible error. For the reasons discussed below, the Court finds that this record was complete with no obvious gaps, and that the ALJ's decision was based on substantial evidence.

"[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). The Court notes at the outset that this record is quite large, spanning two volumes, and appears to contain plaintiff's entire relevant medical history. Plaintiff does not argue that any additional treatment notes existed. Rather, plaintiff argues that the lack of a treating physician's opinion rendered this record incomplete.

In <u>Pellam v. Astrue</u>, 508 F. App'x 87, 89 (2d Cir. 2013), the plaintiff "argue[d] that an ALJ cannot determine a claimant's functional limitations without the support of at least some medical opinion concerning those limitations." In <u>Pellam</u>, although the ALJ stated that he rejected a consulting opinion, the consulting source's "medical opinion largely supported the ALJ's assessment of Pellam's residual functional capacity." <u>Id.</u> at 90. "Under these circumstances – especially considering that the ALJ also had all of the treatment notes from [plaintiff's] treating physicians," the

Second Circuit held that "the ALJ had [no] further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians." Id. Ultimately, the Court held that because the ALJ's RFC assessment took into account evidence that plaintiff complained of pain, had some limited range of motion, and needed a sit/stand option, the RFC assessment was supported by substantial evidence. Id. at 91.

Similar facts are presented here. Although the ALJ gave consulting physician Dr. Schwab's opinion only "some" weight, the ultimate RFC finding was supported by Dr. Schwab's opinion, which actually found *no* restrictions, and the findings of Dr. Schwab's examination, which showed that plaintiff had some decreased range of motion. Moreover, the ALJ assessed numerous statements throughout the record, from plaintiff's treating physicians, stating her capacity to do work in terms of workers compensation rules. Many of those opinions (opining that plaintiff was either temporarily totally or permanently partially disabled) involved the ultimate issue of disability, which is reserved to the Commissioner as the ALJ noted. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). However, plaintiff's treatment notes indicate that her difficulties centered on ROM limitations in the lumbar spine, as well as complaints of back and leg pain. Her condition improved after each injury, as the ALJ noted. Her most recent treatment notes indicated that her pain eventually stabilized, with pain

management, at an "acceptable" level, see T. 927-36, and that she was assessed as having a permanent *partial* disability, indicating that some, but not all, of her work-related functioning had been lost. In this case, like in Pellam, the ALJ's failure to obtain a treating source opinion did not constitute error because the RFC finding was consistent with Dr. Schwab's consulting opinion, and with other substantial evidence which supported the ALJ's finding that plaintiff retained an RFC for sedentary work.

The Court also notes that plaintiff was represented at the hearing level, which is not dispositive, but which factors into the assessment of whether she had an adequate opportunity to develop the record. "Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." Shaffer v. Colvin, 2015 WL 9307349, *2 (W.D.N.Y. Dec. 21, 2015) (quoting Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989)). The ALJ left the record open for an additional 30 days beyond the hearing date; however, plaintiff did not submit any further opinion evidence. Under these circumstances, remand is not appropriate. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the

ground that the ALJ failed to request medical opinions in assessing [RFC].").

This case distinguishes from those cited by plaintiff in which the courts found that the lack of a treating source opinion left a gap in the record. See Doc. 6-1 at 24 (citing Gross v. Astrue, 2014 WL 1806779, *22 (W.D.N.Y. May 7, 2014); House v. Astrue, 2013 WL 422058, *4 (N.D.N.Y. Feb. 1, 2013)). In both of those cases, the ALJ's RFC assessment was entirely unsupported by any medical assessment. As discussed above, however, here Dr. Schwab's assessment did support the RFC finding. Additionally, here, there is evidence in plaintiff's medical record from which the ALJ could glean plaintiff's functional capabilities as time went on, such as statements from physicians that she would eventually be able to return to work and the eventual assessment that she was permanently only partially disabled.

In Gross, by contrast, the "records generally contain[ed] only bare medical findings and [did] not address or shed light on how [the plaintiff's] impairments affect[ed] his physical ability to perform work-related functions." 2014 WL 1806779, at *18. Here, the ALJ's RFC assessment represented a permissible resolution of conflicting evidence, rather than an impermissible interpretation of bare medical findings. See Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in

the record where the record provides sufficient evidence for such a resolution[.]").

### C. Credibility

Finally, plaintiff contends that the ALJ erroneously assessed her credibility. Upon review of the record and the ALJ's decision, the Court concludes that the ALJ properly applied the two-step analysis in assessing plaintiff's credibility. See 20 C.F.R. §§ 404.1529, 416.929. The ALJ's decision included a summary of plaintiff's testimony regarding her daily activities, as well as her subjective complaints of pain. In the context of his discussion of the record, the ALJ cited, among other sources, 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p.

The ALJ's discussion, which incorporates a review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to

conclude that he considered the entire evidentiary record."). Therefore, the ALJ's credibility finding will not be disturbed.

## VI.   Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 6) is denied and the Commissioner's motion (Doc. 9) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice.  The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    March 22, 2016
          Rochester, New York.